WILLIAM CLOKE ET AL.

V.

SAMUEL DOWSE.

*Warehousemen—Sale by Them of Part of Stored Grain—Right of Owner to Consider Grain Sold to Warehousemen—Destruction of Warehouse by Fire.*

Where warehousemen, by selling part of grain stored, put it out of their power to return to the owners the full amount of grain delivered them, they by such act authorize the owners to consider the entire deposit of grain as sold to them, and in case of destruction of the grain by fire the warehousemen are liable to the original owners for the full amount of the grain stored.

[Opinion filed September 20, 1890.]

APPEAL from the Circuit Court of Ford County; the Hon. A. SAMPLE, Judge, presiding.

Mr. C. H. PAYSON, for appellants.

Messrs. COOK & MOFFETT, for appellee.

PLEASANTS, J.   Appellants operated a public warehouse of class B, at Kempton.   On the 7th of September, 1889, appellee delivered to them there over 2,000 bushels of shelled corn. There was no special agreement between the parties as to a sale or a storage of the grain; but by the rules of storage, printed and posted at the warehouse, "all grain in good condition might be stored thirty days free of charge, and thereafter at one cent per bushel for fractional thirty days from five to fifteen; over that number of days and under thirty, one cent—all subject to owner's risk"—and appellants "reserved the right to inspect all grain presented for storage, and to place therewith other grain of same grade and quality."   It was their custom in the absence of any special· agreement to ship from grain on storage indiscriminately, whenever they saw fit, and return an equal amount of same grade and quality, or pay the market price on the day when settlement was demanded—taking the chances of a rise or fall between the dates of shipment and settlement.   The warehouse was burned on October 1st.   They concede that at the time of the fire the grain actually in store was 300 bushels short of the quantity for which they were chargeable to different parties; and that of the amount claimed to be on hand 1,500 bushels were in the ear, in cribs used in connection with the warehouse, and a thousand in cars, to be stored for Martin Shafroth.   Thus they claim that they were liable for about 5,200 bushels, and had on hand about 4,966.   Appellee

claims, however, and there was evidence tending to prove that they were short considerably more, and appellants admit they were in the habit of shipping stored corn without regard to the extent to which it would leave them short for a time, trusting to be able to buy in enough to meet the demand when made by the owner. It also appears that appellants at three different times after the delivery by appellee, and before the fire, paid or advanced to him sums of money amounting in all to $100—which he claims to have understood and received as payments on account of the corn, and they as accommodation loans until he should make sale of it, though they say it was the universal custom of those who stored grain with them to sell to them.

After the fire appellants were willing to pay appellee for his proportion of the amount they were short, as having shipped and converted so much of his corn, but no more; and this suit was brought to recover the value of all he delivered. The cause was tried by the court without a jury, and for reasons stated in an opinion filed judgment was rendered in favor of the plaintiff for $480.69.

Our view of the case is that though there was never any express agreement for a sale of the corn to appellants, and though the conduct of the parties as shown, (until appellants, by their shipment and sale, voluntarily and at their own risk materially reduced the amount in store belonging to appellee,) might not be sufficient to prove a sale to, or conversion by them, yet, by that act, assuming to dispose of so much of it as they pleased, they gave to appellee the option to treat it as a purchase of the whole. He was not bound to receive corn in the ear for shelled corn, nor a less quantity than he delivered, nor even the full amount in shelled corn of the same grade in quality which was not theirs to give. Having by their own act put it out of their power to return the property delivered (or its like) in specie, the law imposed the obligation and implied a promise to pay its value in money. And so, without concurring in all the views expressed by the court below, we think the finding was right and the judgment will therefore be affirmed.

*Judgment affirmed.*