[No. 12657.  *En Banc.*  December 15, 1915.]

THE STATE OF WASHINGTON, *on the Relation of A. R. Maulsby, Respondent*, v. T. C. FLEMING *et al., Appellants.*[1]

STATUTES—UNIFORMITY—COUNTY GOVERNMENT — CORONERS.  Under Const., art. 11, § 4, providing for the establishment of a system of county government "which shall be uniform throughout the state," the legislature was without power to enact 3 Rem. & Bal. Code, § 4030-1 *et seq.* abolishing the office of county coroner "as to all counties of this state except counties of the first class," and authorizing prosecuting attorneys and justices of the peace residing at the county seats of minor counties to assume the duties of coroners.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered February 20, 1915, in favor of the plaintiff, upon overruling a demurrer to the complaint, in an action to compel the issuance of a salary warrant to a county officer, tried to the court.  Affirmed.

*O. T. Webb*, for appellants.

*Cooley & Horan, R. Mulvihill* and *W. H. Heaton*, for respondent.

MOUNT, J.—The constitutionality of chap. 55, Laws of 1913, p. 165 (3 Rem. & Bal. Code, § 4030-1 *et seq*), is the only question presented in this case.  On a demurrer to the petition of the relator, the trial court held this act void.  This appeal followed:

The title of the act is as follows:

"An act relating to the duties and functions of coroners and justices of the peace; abolishing the office of county coroner in certain counties, and repealing all acts in conflict herewith."

In substance, the act authorizes the prosecuting attorneys and justices of the peace residing at the county seats of all

[1]Reported in 153 Pac. 347.

counties, except counties of the first class, to assume the duties which ordinarily are imposed upon coroners.

The act then, at § 9, provides as follows:

"The office of county coroner is hereby abolished as to all counties of this state except counties of the first class, and none of the provisions of this act shall apply to or in counties of the first class." 3 Rem. & Bal. Code, § 4030-9.

The constitution, at § 4 of art. 11, provides as follows:

"The legislature shall establish a system of county government, which shall be uniform throughout the state, . . ."

Section 5 of the same article provides:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. . . ."

It is apparent from the section last quoted that the legislature is authorized to classify counties by population for the purpose of regulating the compensation of such officers. This is plain. Section 4 of the constitution, above quoted, provides, that the legislature shall establish a system of county government which shall be uniform throughout the state. The legislature has, in accordance with these provisions, classified counties for the purpose of regulating the compensation of county officers. Rem. & Bal. Code, § 4031 (P. C. 115 § 5). It seems too plain to admit of serious dispute that a system of county government which permits certain officers in one county which are not permitted in another county is not a uniform system. If the legislature may abolish coroners in counties of all classes except the first, it may abolish such officers in any one class and retain them in another. It may, by the same rule, require certain officers in one

county, and entirely different officers with entirely different duties in another. It cannot be reasonably contended that this would be a uniform system. If this law is a valid exercise of legislation, then counties of the first class are provided with an .officer known as a coroner, with certain defined duties, while all other classes of counties have no such officer. The duties which usually fall upon such officer are distributed to prosecuting attorneys and certain justices of the peace, thereby imposing duties upon justices of the peace and upon prosecuting attorneys in all counties except the first class, which duties are not imposed upon justices of the peace and prosecuting attorneys in counties of the first class. It is plain that this is not a uniform system.

We have no doubt that the legislature has the power to entirely abolish the office of coroner in all counties of the state, and to impose the duties of that office upon some other officer. But the legislature certainly has no right under the constitutional provision quoted to provide for officers in counties of the first class which are not provided for in other counties'. In order that the system may be the same, the officers must be the same; and their duties must be the same; otherwise the system is different.

In *Singleton v. Eureka County*, 22 Nev. 91, 35 Pac. 833, the supreme court of Nevada, in construing provisions of the constitution of that state which are the same as ours, held that an act authorizing a sheriff of a certain county to appoint a night watchman at a fixed salary to be paid by the county was invalid, and in the concurring opinion by Judge Bigelow, he said:

"A system of government consists of the powers, duties and obligations placed upon the political organization, and the scheme of officers charged with their administration. If the system is to be uniform, it is necessary that these powers, duties and obligations shall be the same in each county; that the same officers shall be provided, and the responsibilities of government be divided among them in the same manner; otherwise the system is not uniform, for, as here used, the

word means that the county governments to be established are in all essential particulars to be alike. *State v. Boyd,* 19 Nev. 43, is an authority squarely in point, and that fully sustains this construction of the constitution, . . ."

In *State ex rel. Wright v. Standford,* 24 Utah 148, 66 Pac. 1061, the supreme court of Utah, in considering the question here presented, said:

"A uniform system of county government, within the meaning of the constitution, is a system or plan of government of the several counties in the state which is uniform, so that its several parts shall be applicable to each county. The state legislature is forbidden to pass any private or special laws regulating county affairs. The laws enacted must be uniform generally, and applicable to all of the counties throughout the state. In *Welsh v. Bramlet, supra* [98 Cal. 219], 33 Pac. 68, it is said: 'Whenever it attempts to enact a law for one or more of the counties of the state upon subjects that it is directed to provide for by general laws, or which are to form part of a uniform system for the whole state, whether such counties are designated directly by name, or by reference to a class into which they have been placed for other subjects of legislation, it infringes these provisions of the constitution. We must take judicial knowledge that there is only one county in the state whose population places it in the eighth class, and, if an act is passed by the legislature that is applicable to only one county in the state, it does not cease to be local by reason of the fact that it purports to be applicable to a class of counties which the legislature is not authorized to create for the purpose of such legislation, and of which that county constitutes the only member.' "

See, also, *Welsh v. Bramlet,* 98 Cal. 219, 33 Pac. 66; *Bloss v. Lewis,* 109 Cal. 493, 41 Pac. 1081.

Other authorities might be cited to the same effect. The provisions of the constitution above quoted are so clear to the effect that a system of county government shall be uniform throughout the state, and that laws providing for the election of county officers in the several counties shall be uniform, that it seems useless to multiply authorities to the effect that the legislature is prohibited from abolishing some par-

ticular office in a particular county, or in a particular class of counties. We are satisfied that the trial court correctly held that the act was void, and the judgment is therefore affirmed.

MORRIS, C. J., HOLCOMB, MAIN, PARKER, and ELLIS, JJ., concur.

FULLERTON, J. (concurring)—I concur in the conclusion reached in the foregoing opinion, but for reasons somewhat different from those on which the conclusion is rested. If the first section cited from the constitution stood alone, I would have no difficulty in reaching the conclusion that the legislative act in question is within the constitution. The phrase "system of county government," as I understand it, relates rather to the plan and scheme of government than to the parts and particulars of government, and that a system could be uniform even though there were officers provided for in one or more of the individual counties not provided for in the remainder. But the second section of the constitution cited (art. 11, § 5) is plainly a limitation upon the first, and, indeed, practically determines the "system of county government" the legislature is permitted to establish. It is there provided that the legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers as the public convenience may require, and shall prescribe their duties and fix their term of office. The adjective "several" is clearly here used in its collective sense. It has reference to all of the counties. Hence any "system of county government" established by the legislature must in any event provide for the election of the specially enumerated officers; it may or may not provide for the election of other county, township, precinct, or district officers, but if it does so, I can see no escape from the conclusion that the provision must include the "several" counties;

that is to say, it must make such officers common to all of the counties of the state.

I appreciate the argument based upon the inconvenience of the rule. The varied climatic conditions of the state, and the consequent sectionizing of the principal industries of its people, have heretofore required laws for the fostering and protection of such industries and officers for the enforcement of such laws not necessary to each several county, and, manifestly, the future will call for additional legislation of the same sort. The legislature has heretofore taken care of the situation by the creation of state officers and state boards. Unquestionably, in my opinion, it could be done in a manner less burdensome to the people if the legislature were permitted to enact laws and provide for the election of officers for their enforcement applicable alone to the particular sections or to the particular counties interested, but as I read the constitution, its framers have willed otherwise. This being so, it is for the people, not the courts, to change it.