FRANK BILLINGS, Respondent, v. G. DOERING GRAIN COMPANY, a Copartnership or Sole Trader Composed of G. Doering, Appellant.

(181 N. W. 54.)

**Accord and satisfaction — acceptance of warehouseman's check for balance due on wheat storage held not accord and satisfaction of unliquidated demand.**

　In an action against the warehouseman for an accounting, where it appeared

NOTE.—For authorities passing on the question as to whether acceptance of remittance of part of an unliquidated or disputed claim, accompanied by a statement that it is "in full" or words of similar import, as assent to its receipt in full payment, see notes in 14 L.R.A.(N.S.) 443, and 27 L.R.A.(N.S.) 439.

On payment of a less sum than due, when enforceable as accord and satisfaction, see note in 64 Am. Dec. 138.

that the plaintiff, from time to time, had delivered wheat to the defendant for storage under an oral contract covering the storage rate and an agreement as to advances, and where storage receipts evidencing a different contract were not issued until long after the delivery of the wheat, and when issued were antedated; and where the defendant, pursuant to notice, had closed the storage account, sending the plaintiff a check for an amount which was insufficient to discharge its obligations under the storage tickets, the defendant receiving the check and cashing it without agreeing to accept it in full satisfaction, it is *held:*

1. Where there was no dispute as to the terms of the original oral contract of storage, as to the number of bushels or the amount of the cash advances, and the only basis for dispute arose out of antedated tickets providing for a different rate of storage than that previously agreed upon, the acceptance of a check purporting to represent the "balance due" does not amount to an accord and satisfaction of an unliquidated demand.

**Accord and satisfaction — acceptance of check for balance due held not to establish agreement to receive it in full satisfaction, no consideration being stated.**

2. The tender and acceptance of a check purporting to be for a "balance due," where no condition or statement of the consideration was written in the check, and where there was no prior disagreement or discussion as to the amount actually due, does not establish an agreement on the part of the creditor to receive the check in full satisfaction.

**Accord and satisfaction — agreement and acceptance of consideration necessary to extinguish obligation under statute.**

3. An obligation is not extinguished by an accord and satisfaction under §§ 5824 and 5827, Comp. Laws 1913, unless there be an *agreement* and an acceptance of the consideration thereof by the creditor.

**Warehousemen — rights of person storing wheat under an accounting stated.**

4. Where the plaintiff brought an action for an accounting for grain stored with the defendant, demanding money judgment, and it appears that the defendant had disposed of the grain soon after its delivery and had closed the storage account, the plaintiff has a right to an adjudication of the proper allowance for storage charges, interest on advances, and the price at which the defendant should be charged for the grain, and in these circumstances the fact that he did not demand the grain is immaterial.

**Warehousemen — rights of person storing wheat under storage tickets giving option to demand grain at terminals or terminal bonded warehouse receipts stated.**

5. Where the storage tickets gave the plaintiff a right to demand grain at the terminals or terminal bonded warehouse receipts, and where the local cash

buying was on the basis of future options, it was inequitable to credit the plaintiff on the basis of the future options instead of the higher cash price at the terminal market, where the defendant did not have the wheat on hand and was not required to buy wheat locally to fulfil its obligations under the storage tickets.

Opinion filed January 10, 1921.

Appeal from the District Court of Sheridan County, *W. L. Nuessle,* J.

Affirmed.

*Aloys Wartner,* for appellant.

Acceptance of the check admitted payment in full. Fuller v. Kemp, 138 N. Y. 23, 33 N. E. 1034; Creighton v. Gregory (Cal.) 75 Pac. 569; Barham v. Bank (Ark.) 27 L.R.A.(N.S.) 439; Keck v. Hotel (Iowa) 56 N. W. 438.

Such acceptance is a bar to a subsequent action for the balance, because he cannot accept the benefits of the error and reject the conditions. Nassoly v. Tomlinson, 146 N. Y. 326, 42 N. E. 715; McGregor v. Ware (Mo.) 87 S. W. 981; Beaver v. Porter (Iowa) 105 N. W. 346; Gribble v. Raymond, 109 N. Y. 242.

*O. P. Jordal,* for respondent.

"Mutual rescission implies that the minds of the parties met with a common desire and purpose to cancel the mutual obligation of the written contract." Arnett v. Smith, 11 N. D. 55.

In order to make an accord out of this the defendant will have to show either payment in full, based upon an actual agreement, or consideration for the accord. Canadian Fish Co. v. McShane, 80 Neb. 551, 114 N. W. 594; Eames Vacuum Brake Co. v. Porsser, 157 N. Y. 289, 51 N. E. 986.

BIRDZELL, J. This action was tried in the court below as an action in accounting. Judgment was entered in favor of the plaintiff for a total sum of $5,032.50. The defendant has appealed and demands a trial *de novo.*

Beginning in the fall of 1909, the plaintiff at various times delivered wheat to defendant's grain elevator at Goodrich, North Dakota. Between that fall and the fall of 1915, he had delivered a total of 8,159 bushels and 55 pounds. At the time of the first deliveries, plain-

tiff entered into an oral agreement with one Chris Doering, who was then managing the elevator, whereby he could store the grain in the elevator for not over $1\frac{1}{2}$ cents per bushel a year, and, in case he needed to draw money on account, it would be advanced to him without interest. Thereafter the defendant advanced money to the plaintiff as follows: September 17, 1910, $2,000; November 25, 1912, $172.50; November 22, 1915, $500.

Some time in 1913, the exact time not appearing in the record, but presumably before the harvest, Chris Doering was succeeded as manager of the elevator by Julius Doering, who continued as manager during the remainder of the period involved in this accounting. Subsequent to the change in management, approximately 40 per cent of the grain involved in this accounting was delivered to the elevator for storage, without any change in the storage contract. No storage tickets were issued for the grain as delivered. On December 20, 1915, however, Julius Doering executed, and delivered to the plaintiff by mail, three antedated storage tickets. One was dated September 1, 1912, and called for 7,236 bushels, 25 pounds No. 1 wheat; one was dated July 17, 1913, and called for 527 bushels, 5 pounds No. 1 wheat, and the other was dated December 20, 1915, and called for 396 bushels, 25 pounds No. 3 wheat. Each ticket provided for storage at the legal rate, which exceeded the original contract rate, and the ticket for 7,236 bushels 25 pounds had indorsed across the face of it the total amount of cash previously advanced, as follows: "To Cash, $2,672.50." On July 25, 1917, defendant wrote the plaintiff as follows:

"This is to notify you that you must dispose of your stored wheat with us by the 10th of August. As the government is curbing all speculations they have shut off all trading in futures, and I will have to sell my futures which I have been carrying for you, together with the cash grain on hand, and can't buy it back.

"You will be charged full storage and interest on the money we have advanced you at 10 per cent, same as we are paying, and want you to bring in your weight tickets and storage tickets by above date and oblige

"Yours respectfully,
"J. R. Doering,
"Manager.

'. "P. S. In the event of not hearing from you, we will figure same up according to our records, and deposit same with the First National Bank here to your credit."

On the 10th of August, defendant wrote the plaintiff again as follows:

"Enclosed find our check for $9,267.70, which represents the balance due you after storage, money advanced, and interest on same has been deducted.

"Yours respectfully,
"J. R. Doering."

No statement of the plaintiff's account accompanied the letter transmitting the check, and the plaintiff testifies that he endeavored, without success, to see Doering before he cashed the check. The latter, however, testifies that he saw the plaintiff before the check was cashed, and they discussed the matters in dispute between them, and that plaintiff later deposited the check. At a subsequent meeting, however, something was said with reference to the inaccuracy of the account, and the defendant promised to check over the figures and see if they were correct, and, in case they were found to be incorrect, a check would be sent for any balance due the plaintiff. Accordingly, a check for $17.80, dated the 11th of September, 1917, was mailed to the plaintiff. He received it, but never cashed it. In the lower left-hand corner, in close proximity to the bold-faced type in which the name of the drawee bank was printed, and in very fine script, appears the following: "Bal. due him on wheat to date in elevator." The defendant explains this later check by the correction of an error in figuring dockage twice on a portion of the wheat.

In the defendant's statement of account which was exhibited to the plaintiff after the check had been sent, and which shows the processes by which the balance of $9,672.70 was arrived at, it appears that the defendant figured storage charges at the rate stated in the storage tickets from the time the wheat was originally stored, and 10 per cent interest on the money advanced from the time of the advancement to the date of the closing of the account; it credited the plaintiff with 7,763 bushels and 30 pounds of No. 1 wheat at $2.16 per bushel, and 396 bushels and 25 pounds of No. 3 wheat at $1.96 per bushel.

The trial court reduced the storage charges by applying the original contract rate for the period elapsing between the original storage and the date of the storage tickets, and the storage ticket rate from their date to the date of settlement. It also reduced the interest charges from 10 per cent, from the time the money was advanced, to 7 per cent, the legal rate, from the date borne by the storage ticket containing the indorsement of the amount of cash advanced; and, instead of charging the defendant with the cash value of the wheat on August 10, 1917, at $2.16 and $1.96 per bushel, it charged it at the rate of $2.47 for No. 1 and $2.27 for No. 3, after allowing 13 cents per bushel for handling and transportation.

The appellant urges two main contentions upon this appeal, first, that the conduct in relation to the settlement of August 10th and following amounted to an accord and satisfaction; second, if there was not an accord and satisfaction, it is urged that the plaintiff was paid in full for his wheat at the market price.

The evidence shows that the plaintiff was unable to read English script, and that he did not understand the contents of the defendant's letter of July 25th. It further appears that there never was any real dispute as to the quantity of grain delivered, neither are the terms of the original storage contract in dispute, nor is there any question raised concerning the amount of money advanced by the defendant to the plaintiff from time to time. The only basis for a dispute concerns the rate of storage and the rate of interest, and these are injected into the transaction by virtue of defendant's antedated storage tickets. Even if it be assumed that plaintiff fully appreciated the significance of the defendant's letter of July 25th, in which he was notified that the grain would have to be disposed of by August 10th, he would not be prepared to expect a controversy over anything except the interest on the money advanced; nor, in view of the postscript, was it necessary for him to do any further act in connection with the closing of his storage account, as he was advised that the balance would be placed to his credit in the bank. Notwithstanding Julius Doering's testimony to the contrary, we are of the opinion that everything that was done following the writing of this letter and the closing of the account was done without any discussion between the plaintiff and the defendant; so, it can scarcely be said that the receipt and deposit of the $9,267.70 check amounted to

an accord and satisfaction. There was not even a statement of the account accompanying the check, nor was there any statement that it was given in full settlement. The statement in fine writing on the small check for $17.80, that was never cashed, is certainly not sufficient, in the circumstances disclosed here, to apprise the plaintiff that it was given as a settlement in full, even if it had been cashed by him. In our opinion, the evidence falls far short of establishing an accord and satisfaction of an unliquidated claim. See 1 R. C. L. p. 197; Harrison v. Henderson, 100 Am. St. Rep. 386 note (67 Kan. 194, 62 L.R.A. 760, 72 Pac. 875).

The appellant relies upon § 5825, Comp. Laws 1913, which provides that an accord is an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled; and upon § 5827, which provides that an acceptance by the creditor of the consideration of an accord extinguishes the obligation. These sections do not have the effect contended for in this case. The basis for an accord is an *"agreement,"* and there is lacking here evidence to show that the plaintiff agreed to accept less than he was entitled to receive. If there was no agreement, and we think it clear that there was none, there was no consideration received by the creditor which would extinguish the obligation.

The appellant's second contention is in the alternative. It is first claimed that the plaintiff has established no case for the recovery of money. This is based on the fact that the plaintiff has regarded the defendant as a warehouseman and has never demanded the grain. It is said that the defendant must be regarded as still holding the grain for the plaintiff. The alternative proposition is that, if the defendant be regarded as liable for the value of the grain, the plaintiff has received full value in the price allowed by the defendant in the August settlement. These contentions are without merit. This action was brought long after the defendant had disposed of the wheat and soon after it had closed the storage account, and in bringing it the plaintiff accepted the situation created by the defendant without adopting the defendant's figures. He demanded that there be an accounting that would show the number of bushels, the proper handling charges, the rate of interest on money advanced, and that he be awarded a money judgment for whatever balance would be owing to him on a proper ac-

counting. Furthermore, the defendant, having proceeded to close the storage account, is not in a position to contend that it should be kept open.

As to the price allowed for the grain, the record shows that cash wheat in the Minneapolis terminal market on August 10th was $2.60 for No. 1 and $2.40 for No. 3, and the only justification made in the record for the wide margin between cash wheat and the price allowed the plaintiff was that, owing to unstable market conditions prevailing at the time, due to the war and the intervention of the Federal government, there was in reality no cash market at Goodrich, and that grain could only be safely bought on the basis of September options. The evidence shows that the plaintiff's wheat had all been disposed of long prior to the prevalence of this condition,—in fact very soon after it was hauled in, and the storage tickets gave him a right to demand terminal bonded warehouse receipts or wheat at the terminals; so, inasmuch as the defendant in closing out the plaintiff's storage account was not required to buy wheat in Goodrich nor to sell on the Minneapolis market wheat it held at Goodrich (and it held none in fact), there is no apparent reason why the plaintiff should be made the victim of the unstable cash market. If the market conditions had so changed that future options no longer afforded the protection needed by the defendant against the obligations evidenced by these storage tickets, it should have been more prompt in terminating its warehouseman's relation, as it had the right to do. Comp. Laws 1913, § 6034. It is not equitable to visit the consequences of its failure so to do upon the plaintiff.

. The judgment is in all things affirmed.