[No. 18434. Department One. May 7, 1924.]

THE STATE OF WASHINGTON, *on the Relation of J. H. Reitmeier, Respondent,* v. S. A. OAKLEY *et al., Appellants.*[1]

STATUTES (18)—SUBJECT AND TITLE—WAREHOUSEMEN—REGULATION OF BUSINESS. The warehousemen's act, entitled an act (1) for the prevention of fraud in the grain and hay trade, (2) for the establishment of standards, (3) regulating warehousemen and dealers, (4) defining the duties of railroads, (5) regulating tracks and connections, and (6) providing penalties, does not embrace distinct and unrelated subjects, in violation of Const. Art. II, § 19, providing that no bill shall embrace more than one subject and that subject expressed in the title; nor was it necessary to mention in the title that a bond is required of warehousemen.

WAREHOUSEMEN (5)—LIABILITY—CONVERSION—NECESSITY FOR DEMAND. A demand upon a warehouseman to restore or deliver wheat, as contemplated by Rem. Comp. Stat., § 7001, in order to authorize an action upon his bond, is not a condition precedent to such an action where the warehouseman was insolvent and had converted the wheat and placed it out of his power to comply with the demand.

WAREHOUSEMEN (5)—PRINCIPAL AND SURETY (47)—ACTION ON BOND—LIABILITY—CONDITIONS PRECEDENT. Since the conversion of

[1]Reported in 225 Pac. 425.

wheat by a warehouseman renders him liable therefor without any demand, a demand is not a condition precedent to an action against the sureties upon his bond the obligation of which was to answer that the warehouseman shall faithfully perform the acts and duties enjoined upon him by law.

PARTIES (24)—JOINDER—PRINCIPAL AND SURETY—JOINT AND SEVERAL BOND. In the case of a joint and several bond upon which the principal is liable, the sureties may be sued separately from the principal, under Rem. Comp. Stat., § 192, giving the plaintiff the right to sue all or any of the persons severally liable on the same obligation.

WAREHOUSEMEN (5)—CONVERSION OF GOODS—EVIDENCE — SUFFICIENCY. A wrongful conversion of wheat by a warehouseman is sufficiently shown by proof that he consigned it to a creditor on demand that his account be taken care of, drew drafts against part of it and billed the balance on open account.

BANKRUPTCY (16)—DISCHARGE—TORTS—WAIVER AND ELECTION. By § 16a of the bankruptcy act, the liability of a surety for a bankrupt is not altered by the discharge of the bankrupt.

SAME (16). Section 17a of the bankruptcy act, providing that a discharge of a bankrupt shall not release from liability for "wilful and malicious injuries to the person or property of another," includes a liability for the conversion of property.

WAREHOUSEMEN (5)—PARTIES (24) — JOINDER — CONTRACTS OF SURETYSHIP—ACTIONS—INSTRUCTIONS. In an action against the sureties upon the bond of a warehouseman in which the principal was not joined because he was insolvent, it is not error to give an instruction calling attention to the reason why he had not been joined.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered October 2, 1923, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a penal bond. Affirmed.

*O. C. Moore,* for appellants.

*McCarthy, Edge & Lantz,* for respondent.

HOLCOMB, J.—This is an appeal from a judgment on a verdict in the sum of $2,000 against appellants as sureties on a penal bond, for an alleged conversion by their principal.

The bond is alleged in the amended complaint to have been executed pursuant to ch. 189, p. 589, Laws of 1919; Rem. Comp. Stat., § 6978 *et seq.* [P. C. § 2642], for the operation of two grain warehouses, one at Waukon, Lincoln county, and the other at Galena, Spokane county, by the J. M. Oakley Grain Company, owned and operated by J. M. Oakley, principal on the bond.

The amended complaint sets forth thirteen causes of action for damages on account of wheat stored in the months of August and September, 1920, by relator and twelve assignors in the bonded warehouse located at Galena, the thirteen causes of action aggregating over eleven thousand dollars. It is charged that the wheat of the several depositors was, during the months of September and October, 1920, wrongfully sold, pledged or otherwise converted and appropriated to the use and benefit of the warehouseman; that the warehouseman was at all times insolvent and at all times unable to deliver the wheat upon demand to the holders of the warehouse receipts issued therefor to the depositors of the wheat; that Oakley and the warehouse concern were subsequently adjudged bankrupt, and that each of the claimants had presented their claims in the bankruptcy court and had received their *pro rata* share of the assets distributed in that proceeding.

A demurrer to the amended complaint was overruled, upon which defendants answered, denying certain allegations, including the allegation of conversion, and alleged three affirmative defenses.

As to the first defense, it is alleged that the Galena warehouse collapsed on September 6, 1920, leaving the wheat stored there unprotected and exposed to the weather, and that it was necessary to restore the wheat therein.

The second defense avers that no demand was ever made on those in charge of the warehouse, or upon one W. L. Walker, from whom it is alleged in the first affirmative defense the Oakley Warehouse Company had purchased a quantity of wheat equal in quality and amount to the wheat stored in the warehouse at Galena, with which to redeem the warehouse receipts outstanding issued by the Oakley Grain Company, and that if demand had been made and the warehouse receipts produced, and the storage charges paid on the wheat so stored by the depositors, wheat of equal grade, quality and quantity would have been delivered to the holders of such warehouse receipts making demand therefor.

The third affirmative defense alleged that certain sums were received on claims presented by respondent and his assignors on account of the wheat stored, as dividends in the involuntary bankruptcy proceedings against J. M. Oakley, the owner and operator of the warehouse, who passed into bankruptcy on March 16, 1921, and was discharged in bankruptcy June 9, 1921. It is also alleged that, by the presentation of their claims in bankruptcy and the acceptance of their *pro rata* share of the dividends from the bankrupt estate, respondent and his assignors elected to proceed against and hold Oakley and his bankrupt concern as upon an implied contract, thereby waiving all other rights, demands, claims or causes of action which they might have had either against Oakley, the Oakley Grain Company, or against these appellants as sureties on the bond. The affirmative defenses of appellants were all put in issue by reply.

At the conclusion of the testimony of respondent, appellants moved to discharge the jury and enter judgment in their favor, and also moved for an instructed

verdict at the conclusion of the entire case. The jury having returned a verdict against appellants, they thereafter moved for judgment n. o. v., and in the alternative for a new trial, upon the grounds that the evidence was insufficient to justify the verdict; that the verdict was against law, and error in law occurring and excepted to at the trial.

(1) It is claimed that the demurrer should have been sustained to the amended complaint for the reasons that (a) the statute under which the bond sued upon was given is unconstitutional and void, and (b) that there was no allegation that any demand was made on the warehouseman for the delivery of the wheat as required by § 23 of the warehouse act, or at all. Laws of 1919, § 23, p. 601; Rem. Comp. Stat., § 7001.

(a) Section 19, Art. II, constitution of Washington, is invoked, which reads: "No bill shall embrace more than one subject, and that subject expressed in the title." The title to the statute in question is as follows:

"An Act (1) for the prevention of fraud in the grain and hay trade in grain and hay products, etc.; (2) for the establishment and preservation of standards for grain and hay, grain and hay products, etc.; (3) regulating warehousemen, shippers and buyers of such commodities; (4) defining the duties of railroads; (5) regulating track and elevator scales and track connections with industries; (6) providing penalties, etc."

It is urged that the title quoted discloses that it embraces at least six distinct, unrelated subjects; that it therefore embraces more than one subject, and furthermore, that the provision requiring a bond is not referred to in the title.

We have always held that the constitutional provision respecting the title to enactments, from con-

siderations of public policy, should be liberally construed, and that in deference to legislative discretion upon the subject, acts will not be construed as void unless they are so beyond any reasonable doubt. *Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735; *Seattle & Lake Wash. Waterway Co. v. Seattle Dock Co.*, 35 Wash. 503, 77 Pac. 845; *Holzman v. Spokane*, 91 Wash. 418, 157 Pac. 1086, and cases there cited.

We cannot agree that the act embraces at least six distinct, unrelated subjects. The principal purpose of the act undoubtedly was to prevent frauds in the grain and hay trade and to regulate warehousemen, shippers and buyers of such commodities, and the establishment and preservation of standards, the duties of railroads with reference to track and elevator scales and track connections with warehouses, and the provision for penalties, were all incidental and necessary to the entire scope of the act, in the view of the legislature, in effectively dealing with the mischiefs sought to be prevented, and are all thoroughly germain to the purposes.

The fact that a bond is required of warehousemen is not necessary to be mentioned in the title. A statement of the general scope of the act is all that is required, and details of all that the act shall require are not necessary to be stated. Requiring the warehouseman to furnish a bond for the protection of persons storing property therein is incidental and germain to the regulation of warehousemen, and to the prevention of frauds in the grain and hay trade. It is not necessary that the title of an act be a complete index of its provisions, or refer to every detail of the subject regulated. *State v. Sharpless*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893; *Seattle & Lake Wash. Waterway Co. v. Seattle Dock Co., supra; State v. Ames*, 47 Wash.

328, 92 Pac. 137; *Maxwell v. Lancaster,* 81 Wash. 602, 143 Pac. 157; *Archibald v. Northern Pac. R. Co.,* 108 Wash. 97, 183 Pac. 95; 25 R. C. L. 885. We are therefore of the opinion that the statute is not void for defects in the title.

(b)   As to the contention that, because of the omission of a demand upon the warehouseman for delivery of the wheat, the complaint and the evidence is defective under § 7001, Rem. Comp. Stat. [P. C. § 2664], which is cited and quoted. That section provides in effect that, upon the return of the receipt to the proper warehouseman, properly indorsed, and upon payment or tender of all advances and legal charges, grain, etc., of the grade, quality and amount named therein shall be delivered to the holder of such receipt within forty-eight hours after facilities have been provided for receiving the same. If, upon such demand and tender, the warehouseman fails to deliver such grain, etc., the person entitled thereto may recover the same by an action. It is contended that, quoting *Salo v. Pacific Coast Casualty Co.,* 95 Wash. 109, 163 Pac. 384, L. R. A. 1917D 613. "In a statutory bond, in order to determine the extent of the liability, the provisions of the act under which the bond is given are read into, and become a part of, such bond."

The statute relied upon does not change the law that a warehouseman is a bailee; 27 R. C. L. 978; that those who store wheat in a warehouse become tenants in common of the mass, each having an undivided interest in the mass, and where for any cause not occasioned by the fault of the depositors the amount of the grain on hand becomes less than that for which there are outstanding receipts, the depositor has no right as against other depositors for more than a *pro rata* share. 27 R. C. L. 979.

The evidence shows that Oakley, the principal, shortly after the deposit of the wheat by the persons here concerned, in the warehouse, shipped the greater part of it to White-Dulany Company. He attempted to justify upon the ground that, after the warehouse collapsed, with the knowledge and approval of most of the depositors, the bulk of the wheat was shipped to White-Dulany Company on consignment for restorage. Very few of the depositors were consulted, but those who were consulted agreed to the restorage, but not to a sale thereof. The wheat was not restored. Drafts to the amount of nine thousand dollars were drawn against part of the wheat, and the rest of it was billed on open account with White-Dulany Company. Oakley made some effort to make an arrangement with Walker, as heretofore referred to in the affirmative answers, by which Walker would redeem these outstanding warehouse receipts, but Walker never had on hand at any time sufficient wheat of the kind and quality with which to redeem the outstanding receipts, and there never was to exceed 150 sacks of wheat which had been deposited by those concerned in this case left on hand in the warehouse after its collapse. Hence, from the evidence it is apparent that Oakley had placed it beyond his power to comply with any demand, upon the presentation of the warehouse receipts and tender of storage charges, within forty-eight hours, or at all. No demand is necessary as a requisite to bringing action for conversion where the warehouseman has placed it out of his power to comply with such demand, as a result of reducing the amount of stored wheat very greatly below the amount called for by outstanding receipts, since there is an impossibility of compliance, and a vain and useless act is not required of a depositor and receipt holder.

*Cloke v. Safroth,* 38 Ill. App. 251; *Cloke v. Dowse,* 38 Ill. App. 252; 27 R. C. L. 1000. In fact, it has been held that sending stored products off and selling without authority was a conversion which renders the warehouseman liable without a demand in any event. *Hagard v. Elson,* 21 Tex. 506; *O'Neil v. Montana Elevator Co.,* 65 Mont. 259, 211 Pac. 222; *Billings v. Doering Grain Co.,* 47 N. D. 196, 181 N. W. 54; *Buffalo Grain Co. v. Sowerby,* 195 N. Y. 355, 88 N. E. 569; *Freehill v. Hueni,* 103 Ill. App. 118.

Hence, so far as the principal on the bond was concerned, he was liable for tort for conversion of the wheat, regardless of whether a demand was made at any time thereafter by the depositors and receipt holders. Cases from this court which appellants seem to think hold to the contrary were cases where demand and tender were made, and not being complied with, nothing more was needed to put the warehouseman in default. *First Nat. Bank of Pullman v. Young,* 20 Wash. 337, 55 Pac. 215; *Union Elevator & Warehouse Co. v. Farmers' Warehouse Co.,* 69 Wash. 664, 125 Pac. 960; *Northwestern Grain Co. v. Kerr Gifford Warehouse Co.,* 76 Wash. 689, 136 Pac. 1154.

In this case the principal was not joined with the sureties, but if the principal is bound without demand regardless of the provisions of the statute, the sureties are also bound, for the obligation of their bond is to answer that the warehouseman shall faithfully perform the acts and duties enjoined on him by law; and a surety on a joint and several bond may be sued separately from the principal, under Rem. Comp. Stat., § 192 [P. C. § 8273], giving the plaintiff the right to sue all or any of the persons severally liable on the same obligation. *Kanters v. Kotick,* 102 Wash. 523, 173 Pac. 329.

True, it is well settled that a surety cannot be held liable upon a bond where the principal is not liable, a principle we have invariably applied; but we hold that the principal here would be liable if he were solvent, and could be sued either jointly or severally with the sureties; and he being liable, the sureties under his statutory bond must be liable. Consequently the demurrer was properly overruled and the evidence of respondent made a case for the jury.

(2) It is contended that the proof does not establish that the wheat was wilfully or otherwise converted by the warehouseman. We think that what has been said with reference to the wheat being consigned to White-Dulany Company pursuant to a demand that Oakley's account be taken care of, together with the correspondence and shipping advices and other written evidence, leaves no doubt but that there was wrongful conversion.

(3) The jury were instructed that they would have nothing to do with the third affirmative defense, setting up waiver and election by filing claims in bankruptcy, which these appellants contend was manifest error.

Section 63a of the Federal bankruptcy act, which is quoted and relied upon, reads:

"(a) Debts of the bankrupt may be proved and allowed against his estate which are . . . . (4) founded upon an open account, or upon a contract express or implied; . . . ." 1 Fed. Stats. Ann. (2d ed.), p. 1054.

Cases from the supreme court of the United States and other courts passing upon this section of the bankruptcy act are cited and quoted to the effect that some torts may be waived and be the basis of provable claims, and that where the claimant has elected his remedy as upon an implied contract, thus bringing his

claim within the meaning of § 63, *supra,* he is barred of any other remedy.

Section 16a of the bankruptcy act, not considered in connection with any of the cases cited by appellants, is as follows:

"The liability of a person who is . . . . in any sense a surety for a bankrupt, shall not be altered by the discharge of such bankrupt . . . ." 1 Fed. Stats. Ann. (2d ed.), p. 706.

That provision would seem to be sufficient in itself, for its language is plain and unambiguous and needs no interpretation. But there is another section, 17a of the bankruptcy act, 1 Fed. Stats. Ann. (2d ed.), p. 716, as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . . . . . . (2) liability for obtaining property by false pretenses or false representations or for wilfull and malicious injuries to the person or property of another . . . ."

This section has been before the supreme court of the United States, and in *McIntyre v. Kavanaugh,* 242 U. S. 138, it was held that the words "for wilfull and malicious injuries to the person or property of another" were comprehensive enough to include conversion or appropriation of property. It was also held in that case that proving such a claim against the bankrupt estate waives "no legal rights in this action or otherwise." To the same effect are *Baker v. Bryant Fertilizer Co.,* 271 Fed. 473; *In re Stenger,* 283 Fed. 419; *Friend v. Talcott,* 228 U. S. 27.

We therefore conclude that respondent had a right to proceed against the bankrupt estate and collect as much as possible, and then against the sureties on the warehouseman's bond. They are, in fact, collecting but a small percentage of their total loss, for the bond

was for only $2,000 and their total losses were over $11,000, and they received but a very small percentage in the bankruptcy proceedings.

(4) It is insisted that the court committed reversible error in giving an instruction to the effect that, where a warehouseman has given a bond conditioned on the faithful performance of the duties enjoined upon him by law, and thereafter becomes insolvent, the sureties thereon, to the extent of the penal sum of such bond, become liable to respond in damages for the failure of the warehouseman to faithfully perform the duties required of him by law, in any action brought to recover such damages, without the necessity of joining as a party defendant the warehouseman.

By this instruction the court merely drew the attention of the jury to the reason why the warehouseman was not joined as a defendant in the action. The bankruptcy of the warehouseman was not denied. Since he was insolvent, there was no advantage in making him a defendant.

We do not construe the instruction as instructing the jury that insolvency constituted a breach of duty imposing liability upon the sureties, except because of their principal's default in payment, which is manifest from the very fact of insolvency. The instruction was in line with the statute, Rem. Comp. Stat., § 192 [P. C. § 8273], and the case of *Kanters v. Kotick, supra.*

We conclude that the case was properly submitted to the jury, tried upon ample and competent evidence, and that there is no error justifying reversal.

Affirmed.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.