[No. 25744. Department One. June 13, 1935.]

THE STATE OF WASHINGTON, *on the Relation of Harvey Scofield et al., Appellant,* v. FORREST R. EASTERDAY, *as Engineer for Pierce County, Respondent.*[1]

[1]Reported in 46 P. (2d) 1052.

210

*Harry H. Johnston, John E. Belcher, Ralph E. Foley,* and *A. O. Colburn,* for appellants Scofield *et al.*

*John E. Gallagher,* for appellant Gregory.

*John T. McCutcheon* and *E. K. Murray,* for respondent.

*H. E. T. Herman, amicus curiae.*

MAIN, J.—Harvey O. Scofield, A. A. Rankin and Cal Guthrie, as members of the board of county commis-

sioners of Pierce county, brought this action seeking to restrain Forrest R. Easterday, the county engineer, from performing the duties conferred upon him by chapter 179, Laws of 1935, p. 705. After the action was instituted, E. F. Gregory, a resident and taxpayer of Pierce county, intervened and sought the same relief as the county commissioners. The hearing resulted in a judgment denying all relief sought, except that the engineer was restrained from taking over the duties conferred upon him by chapter 179 until June 14, 1935. From this judgment, the county commissioners and the intervener appeal.

Chapter 179 is entitled:

"An Act relating to the maintenance and control of county and secondary highways in counties of the first class, and declaring an emergency."

Section 1 of the act provides that county engineers of counties of the first class shall have

". . . general control and management of the county roads in their respective counties, and shall have power to appoint any and all necessary assistants to perform said duties." [Rem. 1935 Sup., § 4144-1.]

Another section of the act provided that all provisions of the statutes of this state "in conflict therewith are hereby repealed so far as they affect counties of the first class." The act carried an emergency clause. This act was passed by the House March 14, 1935, by the Senate March 14, 1935, and approved by the governor March 23, 1935.

Chapter 111 of the Laws of 1935, p. 279, was passed by the Senate March 11, 1935, passed the House March 13, 1935, and approved by the governor March 20, 1935. This is a general act, and, according to its title, relates to the public roads of the state, abolishes the general road, bridge and lateral highway funds, and a

number of other things. This act also carried an emergency clause. [Rem. 1935 Sup., § 6330.]

It will be observed that chapter 179 was subsequent to chapter 111 in point of time. The two acts are in conflict in a number of particulars.

The question here presented is whether chapter 179 was a valid enactment. In support of their contention that it was invalid, the commissioners and intervener make a number of contentions, the first of which is that the title of chapter 179 was not sufficient to satisfy the requirements of section 19 of Art. 2 of the constitution, which provides that no bill shall embrace more than one subject, and "that shall be expressed in the title." The title of chapter 179 is general, and recites that the act is one relating to the maintenance and control of county and secondary highways. Section 1 of the act provides that the county engineers of counties of the first class shall have "general control and management of the county roads" in their respective counties, and shall have the right to appoint necessary assistants.

We see nothing in the act which does not come within the general scope of the title. No general statement of the subject of an act is necessary to meet the requirements of the constitution. A few well-chosen words, suggestive of the general subject stated, is all that is necessary. A title to an act should be liberally construed, and in deference to the legislative discretion on the subject, acts will not be construed as void, as violating the constitution, unless they are so beyond any reasonable doubt. A title to an act may be as broad as the legislature sees fit to make it, and thereunder any specific legislation as to any subject relating to the general character thus broadly embraced in the title will be sustained. *Percival v. Cowychee & Wide Hollow Irr. Dist.*, 15 Wash. 480, 46 Pac. 1035;

*State ex rel. Seattle Electric Co. v. Superior Court,*
28 Wash. 317, 68 Pac. 957, 92 Am. St. 831; *State ex rel.
Reitmeier v. Oakley,* 129 Wash. 553, 225 Pac. 425;
*King County v. Stringer,* 130 Wash. 287, 227 Pac. 17;
*In re Peterson's Estate, ante* p. 29, 45 P. (2d) 45. The
title of the act now before us meets the constitutional
requirement.

 It is next contended that chapter 179 is amend-
atory of prior statutes which are not set forth as
amended, as required by § 37 of Art. 2 of the consti-
tution, which provides that no act shall be revised or
amended "by mere reference to its title, but the act
revised or the section amended shall be set forth at full
length." Nowhere in chapter 179 is any reference
made to any prior statutes except the general state-
ment that all the prior acts in conflict therewith are
repealed, in so far as such conflict exists. The act is
complete in itself. To such an act, the constitutional
provision requiring the amended section to be set out
at full length does not apply. *Spokane Grain & Fuel
Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316; *In re Hulet,*
159 Wash. 98, 292 Pac. 430; *In re Peterson's Estate,
ante* p. 29, 45 P. (2d) 45.

 It is next contended that chapter 179 does not
conform to the requirements of § 4 of Art. 11 of the
constitution, which provides that the legislature shall
establish a system of uniform county government
which shall be uniform throughout the state. In *State
ex rel. Maulsby v. Fleming,* 88 Wash. 583, 153 Pac. 347,
it was held that an act which abolished the office of
county coroner in certain counties, and authorized the
prosecuting attorneys and justices of the peace to
assume the duties of coroners in those counties, was
void, because it was not in accordance with the con-
stitutional provision which required that the system
of county government should be "uniform throughout

the state.'' After that decision and in the year 1924, § 5 of Art. 11 of the constitution was amended, and, as amended, provides that the legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, clerks, treasurers, prosecuting attorneys, and other county, township, precinct and district officers

'' . . . as public convenience may require, and shall prescribe their duties, and fix their terms of office: Provided, that the legislature may, by general laws, classify the counties by population and provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers.''

It will be observed that, by this section, the legislature is authorized to ''prescribe their duties'' of all the officers named therein, and such as the legislature may create, and may authorize certain officers to exercise the powers and perform the duties of ''two or more officers.'' If the legislature has the power, as the constitution says, to prescribe the duties of the county officers and authorize one officer to perform the duties of two or more other officers, it would necessarily seem to follow that the legislature, under such provisions, had the right to transfer, as it did in chapter 179, the management and control of county highways from the board of county commissioners to the duly qualified and acting county engineer.

In this connection, it is also said that the act, providing that the engineer may appoint any and all necessary assistants, gives him power to create an office. But we see no merit in this contention, and it does not require any discussion. Clearly, the naming of an assistant is not the creation of an office. The case of *State ex rel. Egbert v. Blumberg,* 46 Wash. 270, 89 Pac. 708, is entirely different. There, the legislature created an office which was to be filled by appointment

made by the county commissioners, and it was held that such act violated section 5 of article 11 of the constitution requiring all county officers to be elected.

It is next contended that chapter 179 is not a later act than chapter 111, because the emergency clause attached to chapter 179 is void, as held by the trial court. It seems to be assumed that the emergency clause to this chapter is bad, and that to chapter 111 is good, a question which it is not necessary here to decide. In determining whether an emergency clause is valid, one of the rules applied is that effect will be given to the act latest in time, and this court has approved this rule. Another rule is, the fact of there being an emergency clause tends to show that the subject-matter of the act was more clearly and pointedly before the legislature than the subject-matter of the other act; and, third, a special act, prior in time, passed at the same session of the legislature as a general act, may prevail over the latter act. *Whitfield v. Davies,* 78 Wash. 256, 138 Pac. 883; *Spokane County v. Certain Lots in City of Spokane,* 153 Wash. 462, 279 Pac. 724; *State ex rel. Wenatchee etc. Dist. v. Banker,* 179 Wash. 343, 37 P. (2d) 1115.

Chapter 111 is a general law because it operates throughout the entire state. Chapter 179 is a special law because it only operates on a particular subject-matter, as already pointed out, in counties of the first class. 25 R. C. L. 814; 59 C. J. 735.

The question of which act shall take effect first resolves itself into discovering the intent of the legislature. Even though the emergency clause to chapter 179 is void, and that to chapter 111 be good, nevertheless the fact that the legislature attached an emergency clause to chapter 179 tends to show the intent of that body. Under the rules stated, chapter 179 will prevail, so far as it is in conflict with chapter 111.

■ It is next contended that chapter 179 is void for uncertainty and indefiniteness. The act, as already indicated, gives the county engineers, in counties of the first class, "general control and management of the county roads in their respective counties." Rem. Rev. Stat., § 6398-1 [P. C. § 5963], provides that boards of county commissioners "shall have general control and management of the county roads in their respective counties." The sentence following defines their duties with respect thereto. It will be observed that chapter 179 uses the same words "control and management." Chapter 179 is not void for uncertainty or indefiniteness.

We do not pass upon the question of the effect of the emergency clause, because in any event chapter 179 will become effective June 14, 1935, and it was to that date that the county engineer was restrained from taking over the management and control of county highways.

There are a number of other questions discussed in the briefs which we do not deem it necessary at this time to discuss or decide. We have determined all the questions presented which, it appears to us, are involved in the present proceeding. The other questions can more properly be determined as they arise, if they do, after the act becomes operative.

The judgment will be affirmed.

TOLMAN, BEALS, and STEINERT, JJ., concur.

GERAGHTY, J. (dissenting)—Believing that chapter 179, Laws of 1935, p. 705, violates § 4, Art. XI of the state constitution, and § 5 of the same article as revised by the twelfth amendment, I find myself unable to concur in the majority opinion. •

Section 4, Art. XI, of the constitution reads, in part:

"The legislature shall establish a system of county government, which shall be uniform throughout the state, . . ."

Section 5, Art. XI, before amendment, read, in part:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys, and other county, township, or precinct and district officers, as public convenience may require, and shall prescribe their duties and fix their term of office."

In *State ex rel. Maulsby v. Fleming,* 88 Wash. 583, 153 Pac. 347, the court held unconstitutional an act of the legislature abolishing the office of coroner in all counties of the state except counties of the first class. Quoting §§ 4 and 5 of Art. XI, the court said:

"It is apparent from the section last quoted that the legislature is authorized to classify counties by population for the purpose of regulating the compensation of such officers. This is plain. Section 4 of the constitution, above quoted, provides, that the legislature shall establish a system of county government which shall be uniform throughout the state. . . . It seems too plain to admit of serious dispute that a system of county government which permits certain officers in one county which are not permitted in another county is not a uniform system. If the legislature may abolish coroners in counties of all classes except the first, it may abolish such officers in any one class and retain them in another. It may, by the same rule, require certain officers in one county, and entirely different officers with entirely different duties in another. It cannot be reasonably contended that this would be a uniform system. If this law is a valid exercise of legislation, then counties of the first class are provided with an officer known as a coroner, with certain defined duties, while all other classes of counties have no such officer. The duties which usually fall upon such officer are distributed to prosecuting attorneys and certain

justices of the peace, thereby imposing duties upon justices of the peace and upon prosecuting attorneys in all counties except the first class, which duties are not imposed upon justices of the peace and prosecuting attorneys in counties of the first class. It is plain that this is not a uniform system.

"We have no doubt that the legislature has the power to entirely abolish the office of coroner in all counties of the state, and to impose the duties of that office upon some other officer. But the legislature certainly has no right under the constitutional provision quoted to provide for officers in counties of the first class which are not provided for in other counties. *In order that the system may be the same, the officers must be the same; and their duties must be the same; otherwise the system is different.*" (Italics mine.)

To meet the situation created by the decision in *State ex rel. Maulsby v. Fleming,* the legislature submitted amendment 12 to the people of the state at the 1924 election, at which it was adopted. The amended § 5 is as follows:

"The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: Provided, that the legislature may, by general laws, classify the counties by population and provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers. It shall regulate the compensation of all such officers, in proportion to their duties, and for that purpose may classify the counties by population. And it shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession."

It will be seen that, down to the proviso, § 5, as revised in amendment 12, is in the language of the orig-

inal section. The proviso authorized the legislature, by general laws, to classify the counties by population and to provide for the election in certain classes of counties of officers who shall exercise the powers and perform the duties of two or more officers. This is all the change made by the revision. It will thus be seen that the power of the legislature with respect to county government is enlarged by amendment 12 only to the extent that it may, by general law, after the classification of counties by population, provide for the election in certain counties of officers who are to perform the functions of two or more officers. The purpose of this amendment is illustrated by chapter 148, Laws of 1925, Ex. Ses., p. 411, where the counties are classified by population, and provision made for the election in certain classes of certain officers who are to perform the functions of two or more officers, which are abolished.

The law before us does not, in the language of amendment 12, "provide for the election in certain classes of counties certain officers who shall exercise the powers and perform the duties of two or more officers." It continues the offices of engineer and county commissioners in counties of the first class, but transfers to the county engineer, by what the majority opinion admits is a special law, part of the duties assigned in all other counties of the state to the county commissioners. Clearly, this is not a uniform law within the intent of §§ 4 and 5.

The legislature has abolished the office of county engineer in all counties of the state except those of class A and first class, transferring the duties of the engineer to the board of county commissioners. Conceivably, under the authority conferred by the twelfth amendment, the legislature could abolish county commissioners and transfer their functions to other officers of the county. But as I read the amendment in the

light of this court's decision in *State ex rel. Maulsby v. Fleming,* I do not think the legislature can continue the offices of county commissioner and engineer in first class counties and transfer from the commissioners to the engineer duties vested, in all other counties, in the commissioners.

The majority opinion attaches importance to the phrase in amendment 12 authorizing the legislature to ''prescribe the duties'' of all the officers named therein. But this language is used in the original § 5 and was in the mind of the court when it rendered its decision in *State ex rel. Maulsby v. Fleming.*

In specially stressing the requirement for uniformity in legislation affecting the organization of county government, the makers of the constitution undoubtedly had in mind the practice of state legislatures, then too common, in passing special laws transferring functions of county government from one officer to another, wholly upon considerations of political expediency. It was the salutary purpose of §§ 4 and 5 to prevent this practice in the new state of Washington by requiring that all laws having relation to county government should be uniform and general in their application. These provisions were salutary when first adopted; they remain equally so today.